**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

        Plaintiff(s),                  CASE NUMBER: 09-20224
                                                    HONORABLE VICTORIA A. ROBERTS

v.

**BRANDON WILLIAMS,**

        Defendant(s).
        _____/

**ORDER**

**I.    BACKGROUND AND PROCEDURAL HISTORY**

The Government alleges that Defendant George Williams organized and operated a purported health care business under the name Quick Response Medical Professionals, P.C. ("QRMP"). George recruited fake patients to see doctors employed by QRMP. Most of the patients were scheduled for doctor visits by co-Defendant Yolando Young, who instructed the patients to ask for prescriptions for drugs with a high street value.

According to the Government, Defendant Brandon Williams: (1) helped George create QRMP; (2) supervised the QRMP office; (3) arranged unnecessary medical tests; (4) fraudulently billed Medicare; and (5) payed remunerations to Medicare beneficiaries.

Brandon is charged with: (1) Health Care Fraud, in violation of 18 U.S.C. §1347 (Count II); and (2) Unlawful Payments, in violation of 42 U.S.C. §1320a-7b (Count III).

On November 13, 2009, Brandon filed a "Motion for Relief from Prejudicial

1

Joinder/Misjoinder, Severance, and Separate Trial."  (Doc. #113).

On January 29, 2010, Magistrate Judge Virginia M. Morgan filed an "Opinion and Order Denying Defendant Brandon Williams' Motion for Relief from Prejudicial Joinder/Misjoinder, Severance, and Separate Trial."  (Doc. #162).  The Magistrate Judge says Brandon's charges are logically interrelated to the drug counts; Brandon made payments to fake patients to induce them to come to QRMP, and the drug counts relate to the employees' retention of the prescriptions that were prescribed to the fake patients.

In addition, the Magistrate Judge says Brandon failed to prove how he was prejudiced by the joinder.

Before the Court are Brandon's objections to the Magistrate Judge's Opinion and Order.  (Doc. #165).

## II. APPLICABLE LAW AND ANALYSIS

Brandon says the Indictment presents two separate and distinct conspiracies without a sufficient nexus to justify joinder under Fed. R. Crim. P. 8(b):  health care fraud, and the separate drug conspiracy.

Pursuant to Fed. R. Crim. P. 8(b):

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count.

"While it is true that Rule 8(b) should be construed in favor of joinder, it is also true that failure to meet the requirements of this rule constitutes misjoinder as a matter

of law." *United States v. Hatcher*, 680 F.2d 438, 440 (6th Cir. 1982) (internal citation omitted). The Sixth Circuit held that "[u]nder Rule 8(b) multiple defendants may be joined *only* if a sufficient nexus exists between the defendants and the single or multiple acts or transactions charged as offenses." *United States v. Johnson*, 763 F.2d 773, 775 (6th Cir. 1985) (emphasis added). "[A] group of acts or transactions constitutes a 'series' if they are logically interrelated. A group of acts or transactions is logically interrelated, for instance, if the acts or transactions are part of a common scheme or plan." *Id.* at 776 (internal citations omitted).

In a case of misjoinder, "the trial judge has no discretion on the question of severance. Severance in such a case is mandatory." *Hatcher*, 680 F.2d at 442 (citations omitted).

In *Hatcher*, defendants Hatcher and Manetas were jointly indicted and jointly tried for federal narcotics crimes. Both defendants were charged with three counts relating to possession and distribution of heroin. Additionally, Hatcher alone was charged with three counts relating to possession and distribution of cocaine. *Hatcher*, 680 F.2d at 440. The Sixth Circuit held the fact that all counts against both defendants were based on possession and distribution of narcotics was insufficient to justify joinder, even though the evidence showed that Manetas was Hatcher's source of heroin. *See id.* at 442. The trial judge committed reversible error by not granting Manetas' motion for Rule 8(b) severance because "the indictment on its face alleges no connection between Manetas and the cocaine-related charges against Hatcher. Neither does the record reveal any evidence of such a connection." *Id.* at 441. The Sixth Circuit emphasized

3

"[i]f multiple defendants are improperly joined under Rule 8(b) because they are charged with offenses that are unrelated, then they are considered as prejudiced by that fact and the trial judge has no discretion on the question of severance." *Id.*

The Government and the Magistrate Judge say that on the face of the Indictment, the drug and fraud/payment offenses were part of the same series of offenses, and the fraudulent use of the fake patients, was how QRMP obtained the prescription drugs, which were then illegally distributed.

However, Brandon is not charged in Count I – Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances – nor is he charged in any of the other drug counts. All of his co-Defendants are charged in Count I, and they are all charged in the drug counts (except Nancy Williams).

The General Allegations section of the Indictment, which is adopted and incorporated in each count of the Indictment, says:

> the named defendants and others engaged in a scheme and pattern of illegal conduct involving prescription drug controlled substances and fraudulent health care billings.
>
> . . . .
>
> The "patients" would be paid up to $220 in cash for their time and use of their Medicare card for billing purposes, but would not be allowed to keep their prescriptions. QRMP employees, under the direction of GEORGE WILLIAMS, would retain the prescriptions.
>
> GEORGE WILLIAMS would arrange to have the prescriptions filled at various cooperating pharmacies, including Eastside Discount Pharmacy and Westside Discount Pharmacy. GEORGE WILLIAMS would pay cash for the drugs and pick up the controlled substances, either personally or with the assistance of employees, including WEBB SMITH and ERNEST LARRY ADAMS. . . . Employees such as ERNEST LARRY ADAMS, and WEBB SMITH, a/k/a "Buster," were directed to deliver controlled substances to distributers[sic] in exchange for money. Defendant KATRINA LYONS, received controlled substances from GEORGE

4

> WILLIAMS and his employees, for further distribution.
>
> BRANDON WILLIAMS assisted in the creation of QRMP, and supervised the QRMP office. He caused fraudulent Medicare billings, specifically by directing the "Home Visit" billing code to be billed, when he knew that the "patients" were being seen in a hotel room or at a residence on Stratford in Detroit. He arranged unnecessary medical tests and caused fraudulent billings resulting from the unnecessary medical tests.

Neither the General Allegations nor the health care fraud and unlawful payments counts, alleges that Brandon had any connection with the drug counts.

Indeed, the General Allegations separate Brandon from Nancy Williams, the only co-Defendant who is not charged in the drug counts (except the drug conspiracy count). The General Allegations say, "NANCY WILLIAMS . . . knew that GEORGE WILLIAMS and QRMP employees would retain the medically unnecessary prescriptions for controlled substances, and informed GEORGE WILLIAMS as to whether the doctor was writing the desired controlled substance prescriptions."

## III.   CONCLUSION

The Court **DECLINES TO ADOPT** the Magistrate Judge's Opinion and Order. The Court **GRANTS** Brandon's motion pursuant to Fed. R. Crim. P. 8(b); he and his alleged offenses are misjoined.

**IT IS ORDERED**.

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: March 12, 2010

5

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 12, 2010.

s/Linda Vertriest
Deputy Clerk